UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:12-cv-165-RJC

| PHILETUS ERIC RUFF, | ) |  |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | **ORDER** |
| CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 9), and Memorandum in Support, (Doc. No. 10), and Defendant's Motion for Summary Judgment, (Doc. No. 11), and Memorandum in Support, (Doc. No. 12).

**I.      BACKGROUND**

     A.      Procedural Background

Plaintiff Philetus Ruff ("Plaintiff") seeks judicial review of Defendant's denial of his social security claim. (Doc. No. 2). On February 10, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 405 et seq. (2012). (Doc. No. 7-4 at 2). On February 23, 2009, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1383 et seq. (Id. at 3). In both applications, Plaintiff alleged an inability to work due

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (2012).

to disabling conditions beginning on June 25, 2004. (Doc. Nos. 7-3 at 22; 7-6 at 2). The Commissioner denied Plaintiff's application on July 13, 2009, (Doc. No. 7-5 at 2), and subsequently, Plaintiff filed a timely written request for a hearing on February 25, 2010, (id. at 16).

On August 9, 2010, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Doc. No. 7-3 at 40-72). At the hearing, Plaintiff amended the onset date of his disabling conditions to November 26, 2008. (Doc. No. 7-3 at 48). The ALJ issued a decision on September 17, 2010, denying Plaintiff's claim. (Id. at 19-30). Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on May 16, 2012. (Id. at 2-4). Therefore, the September 17, 2010, ALJ decision became the final decision of the Commissioner on May 16, 2012.

Plaintiff's Complaint seeking judicial review and a remand of his case was filed in the Western District of North Carolina Asheville Division on May 23, 2012. (Doc. No. 2). On June 14, 2013, the case was reassigned to the undersigned. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), was filed November 6, 2012, and Defendant's Motion for Summary Judgment, (Doc. No. 11), was filed December 6, 2012. The pending motions are ripe for disposition.

B.    Factual Background

The question before the ALJ was whether Plaintiff was under a "disability," as that term of art is defined for Social Security purposes,[2] at any time between November 26, 2008, the

---

[2] Under the Social Security Act, 42 U.S.C. §§ 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

amended alleged onset date, and the date of the ALJ's decision on September 17, 2010. (Doc. No. 7-3 at 29). To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from November 26, 2008, through the date of his decision, September 17, 2010. (Doc. No. 7-3 at 29).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a) (2012). The five steps are:

> (1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;
>
> (4) whether claimant has the residual functional capacity ("RFC") to perform his or her past relevant work—if yes, not disabled; and
>
> (5) whether, considering claimant's RFC, age, education, and work experience, he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Doc. No. 7-3 at 29).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial

3

gainful activity since November 26, 2008, the amended alleged disability onset date. (Id. at 24). At the second step, the ALJ found that Plaintiff's "grade 2 spondylolisthesis with stenosis with fusion at L5-S1" was a severe impairment. (Id. at 24-25). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that [met] or medically equal[ed] one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1." (Id. at 25).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform "sedentary work . . . with a sit/stand option and only occasional bending, stooping, or crawling."[3] (Id. at 25-26). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Id. at 26). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (Id.).

At the hearing, the vocational expert ("VE") classified Plaintiff's past relevant work as semiskilled and requiring heavy exertion. (Id. at 28, 71). The VE then testified that, with a sedentary RFC and the additional limitations that the ALJ described, Plaintiff could perform other jobs that exist in significant numbers in the national and local economy. (Id. at 71). Consequently, given Plaintiff's sedentary RFC, at step four, the ALJ found that Plaintiff could not perform his past relevant work as a flooring contractor. (Id. at 28). At the fifth and final step, the ALJ concluded, based on the VE's testimony and "considering [Plaintiff's] age,

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2012).

education, work experience, and residual functional capacity," that Plaintiff can make an adjustment to other work. (Id.). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between November 26, 2008, and the date of his decision on September 17, 2010. (Id.).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979). As the Social Security Act provides, if the Commissioner's findings as to any fact are supported by substantial evidence, they shall be conclusive. 42 U.S.C. § 405(g); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . ."). "Substantial evidence" has been defined as "more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see

also Smith, 795 F.2d at 345. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

On appeal to this Court, Plaintiff argues that the ALJ erred as a matter of law in denying his claim on four grounds: (1) the ALJ improperly evaluated two treating physicians' opinions, (2) the ALJ improperly found that Plaintiff's impairment did not meet or medically equal a listed impairment, (3) the ALJ improperly evaluated Plaintiff's credibility, and (4) the ALJ's step five finding was flawed and not supported by substantial evidence. (Doc. No. 10 at 8-12). The Court reviews each of these arguments in turn.

#### A. The ALJ's Evaluation of the Treating Physicians' Opinions

Plaintiff first argues that the ALJ improperly rejected the opinions of two treating physicians. (Doc. No. 10 at 8). Specifically, Plaintiff argues that the ALJ had a duty to contact Dr. Mark Moody, Plaintiff's surgeon, in order to clarify Dr. Moody's opinion, and the ALJ failed to do so. (Id. at 8-9). Also, Plaintiff contends that the ALJ improperly weighed Dr. George Murphy's opinion and failed to provide good reasons for rejecting his opinion. (Id. at 9).

An ALJ must consider all of the available evidence in an individual case. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). However, an ALJ is not required to adopt any particular source's opinion if he or she determines that it is inconsistent with other significant evidence. 20 C.F.R. § 404.1527(c); see also Newman v. Astrue, No. 5:06-CV-00955, 2008 WL 4298550, at *34 (S.D. W. Va. Sept. 18, 2008). In fact, an ALJ may completely reject any evidence or opinion that is inconsistent with other significant record evidence. See Craig v. Chater, 76 F.3d

6

585, 590 (4th Cir. 1996) (upholding ALJ's rejection of treating physician's opinion because the record contained contradictory evidence). An ALJ is also not required to explicitly discuss every piece of evidence and every factor in his decision, "but need only 'minimally articulate' his reasoning so as to 'make a bridge' between the evidence and his conclusions." Fischer v. Barnhart, 129 F. App'x 297, 303 (7th Cir. 2005) (citation omitted). The ALJ generally must provide sufficient explanation as to the weight given to opinions and other record evidence to "ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the [ALJ's] reasoning." SSR 06-03p; see also Newton v. Astrue, 559 F. Supp. 2d 662, 673 (E.D.N.C. 2008) (holding that the ALJ must give sufficient reasoning to show that the proper legal analysis has been conducted).

Plaintiff faults the ALJ for not contacting Dr. Moody in order to clarify whether the instruction he gave to Plaintiff one week after surgery, which directed Plaintiff not to lift over five pounds, continued through the present. (Doc. No. 10 at 8-9). An ALJ must recontact a treating physician if the evidence is inadequate, does not appear to be based on medically acceptable diagnostic techniques, or there is a conflict or ambiguity that must be resolved. Jackson v. Barnhart, 368 F. Supp. 2d 504, 508 (D.S.C. 2005) (citing 20 C.F.R. §§ 404.1512(e)(1), 404.912(e)(1)). None of these situations are present in the instant case. The ALJ gave little weight to Dr. Moody's opinion because it was issued less than a week after Plaintiff's surgery, and because it was inconsistent with the other evidence of record. (Doc. No. 7-3 at 27). In direct contradiction to Dr. Moody's opinion, Plaintiff testified at the hearing that he could probably lift 10 to 15 pounds. (Id. at 58). Furthermore, the ALJ noted and discussed how the record does not support Dr. Moody's opinion. For example, he discussed that, while

7

Plaintiff continues to have limitations as set forth in the RFC, the evidence shows that Plaintiff healed well post-surgery, "transferred well and walked with [a] stable gait," "walked without a limp and had normal strength in all motor groups of the lower extremities," and post-surgery x-rays revealed good progression of the fusion. (Id. at 26-27). Therefore, the ALJ met his burden of explanation as to his consideration of Dr. Moody's statement.

Plaintiff also faults the ALJ's consideration of his primary care physician's opinion. (Doc. No. 10 at 9). Dr. Murphy examined Plaintiff in October 2009, and he noted that he could "not see how [Plaintiff] could do any form of labor at this time." (Doc. No. 7-8 at 116). Opinions as to whether a claimant is disabled, even those from a treating physician, are reserved to the Commissioner and are not given "any special significance." 20 C.F.R. §§ 404.1527(d)(1)-(3). Therefore, Dr. Murphy's opinion that Plaintiff is disabled is one that is reserved to the Commissioner and is not entitled to controlling weight. The ALJ noted that Dr. Murphy's opinion was "not well supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record, specifically the imaging and physical examination studies conducted post-surgery." (Doc. No. 7-3 at 28). As described above, the ALJ also specifically discussed substantial record evidence that articulated the reasoning behind his conclusions. The ALJ considered the evidence and declined to adopt Dr. Murphy's opinion because it conflicted with Plaintiff's post-surgery examinations. (Id. at 26-28).

The ALJ met his burden of explanation by discussing the evidence of record and explaining his finding as to each treating physician's opinion. His discussion appears to contain no material omissions, and he adequately articulated his findings by analyzing substantial

8

medical and other record evidence. Accordingly, the Court finds that the ALJ properly considered the evidence and provided appropriate explanation to support his findings; thus, there is substantial evidence supporting the ALJ's decision. Plaintiff's first objection is overruled.

  B. <u>Whether Plaintiff's Impairment Meets or Medically Equals a Listed Impairment</u>

Plaintiff next argues that the ALJ erred by finding that Plaintiff did not meet the requirements of Listing 1.04A, disorders of the spine. (Doc. No. 10 at 10). Plaintiff bears the burden of establishing that his impairment meets or equals a listed impairment. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). An impairment meets a listing if it "satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement." 20 C.F.R. § 404.1525(c)(3).

Listing 1.04 requires Plaintiff to prove that he suffers from a disorder of the spine, resulting in compromise of a nerve root or the spinal cord. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04. A disorder of the spine may include spinal arachnoiditis or lumbar spinal stenosis. Id. Specifically, Plaintiff must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id. § 1.04A. The ALJ appears to have considered Listings 1.04A, B, and C, and he specifically found that "the record does not otherwise contain evidence of compromise of a nerve root (including the cauda equina), limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness), spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication and an inability to ambulate effectively." (Doc. No. 7-3 at 25).

9

The ALJ also noted that Plaintiff had used a cane, but there was "no evidence in the objective medical record that this was prescribed by one of [Plaintiff's] physicians." (Id.). The ALJ further addressed pertinent evidence later in reference to Plaintiff's RFC. (Id. at 25-28). Therefore, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff's back impairment did not meet or equal Listing 1.04. Plaintiff's second objection is overruled.

      C.      Plaintiff's Credibility

Plaintiff next argues that the ALJ's assessment of his credibility is conclusory and not supported by substantial evidence. (Doc. No. 10 at 10). It is the duty of the ALJ to make credibility determinations. Craig, 76 F.3d at 589. An ALJ must follow a two-step process to determine a claimant's credibility and whether he or she is disabled by pain or other symptoms. First, the regulations require "at the threshold a showing by objective evidence of the existence of a medical impairment 'which could reasonably be expected to produce' the actual pain, in the amount and degree, alleged by the claimant." Id. at 594 (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)). If the claimant meets this threshold, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his or] her ability to work." Id. at 595. This evaluation must take into account:

> not only the claimant's statements about [his or] her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (citations omitted). In the instant case, the ALJ found that Plaintiff met the first prong of the

test.  (Doc. No. 7-3 at 27).

The ALJ then determined that Plaintiff's subjective complaints were not fully credible because they were not consistent with the objective evidence of record.  (Id.).  In evaluating Plaintiff's credibility, the ALJ considered the objective medical evidence, Plaintiff's propensity to testify truthfully, his statements about his symptoms and abilities, his post-operative examinations, and his post-operative rehabilitation.  (Id. at 26-28).  For example, the ALJ noted that Plaintiff had been convicted of forgery, a crime which reflects on one's propensity to tell the truth.  (Id. at 27).  Additionally, the ALJ observed that Plaintiff had "not followed up on recommendations made by his treating physician," had attended only one postoperative visit and failed to attend all other postoperative visits, and had not "undergone any physical therapy for post-surgery rehabilitation."  (Id.); see also Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) ("[A]n unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.").  The ALJ also explained other objective medical evidence that was inconsistent with Plaintiff's statements concerning his symptoms such as his "stable gait," "normal strength in all motor groups of the lower extremities," and "conservative treatment since the surgery."  (Doc. No. 7-3 at 27).

Overall, the ALJ found and adequately explained that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not credible" because they were inconsistent with the objective medical evidence and his assessed RFC.  (Id.).  The ALJ appropriately followed the two-step process for evaluating Plaintiff's credibility.  Accordingly, the Court finds that the ALJ adequately explained his position on Plaintiff's

11

credibility and that his finding is supported by substantial evidence. Plaintiff's third objection is overruled.

  D. <u>The ALJ's Step Five Finding</u>

Plaintiff finally argues that the ALJ improperly relied upon the VE's testimony in making his step five finding. Specifically, he contends that the ALJ failed to resolve the discrepancy between the VE's testimony and the Dictionary of Occupational Titles ("DOT"), the VE failed to provide specific DOT numbers for the jobs identified, and the ALJ failed to quantify the frequency of the sit/stand option in his hypothetical. (Doc. No. 10 at 11-12).

  The ALJ presented the VE with the following hypothetical:

> Suppose we have a hypothetical individual [Plaintiff's] age, education, and prior work experience who is limited to only sedentary work activity but with a sit stand option. Can perform only occasional things like crawling, stooping, bending or stooping [sic]. Could such individual . . . perform any other form of work activity existing in significant numbers in the local or several regions of the national economy?

(Doc. No. 7-3 at 71). The VE responded that "at the sedentary level within those parameters [this hypothetical individual] could do assembly work, sorting, inspecting, [and] surveillance monitoring" and that there were 25,000 of these positions available in North Carolina. (<u>Id.</u>). Where the DOT is "silent as to the availability of a sit/stand option" for a position, it is "entirely proper for the ALJ to obtain and consider VE testimony in order to supplement the DOT job descriptions." <u>McFalls v. Astrue</u>, No. 1:10CV063, 2011 WL 6000513, at *6 (W.D.N.C. Nov. 30, 2011) (Reidinger, J.). The ALJ's hypothetical question encompassed all of the limitations from the RFC finding, including Plaintiff's limitation requiring a sit/stand option. The VE was an expert with an on-going knowledge of vocational practices who is qualified to determine which jobs Plaintiff could or could not perform. The VE testified that Plaintiff could make an

12

adjustment and perform other work that exists in significant numbers in the local economy. As the DOT was silent regarding a sit/stand option, there was no conflict or discrepancy between the DOT and the VE's testimony. Consequently, the ALJ properly relied on the VE's testimony in making his step five finding that Plaintiff could perform other work.

Plaintiff also notes that the VE did not provide the DOT numbers corresponding to the jobs identified that Plaintiff could perform and argues that this deficiency causes the ALJ's decision to run afoul of Social Security regulations. (Doc. No. 10 at 12). Plaintiff fails to cite any authority that requires the VE to provide the specific DOT numbers and fails to show how he was prejudiced by the VE's failure to provide the numbers. See Morgan v. Barnhart, 142 F. App'x 716, 723 (4th Cir. 2005) (applying harmless error doctrine in a Social Security case). Consequently, the Court finds that the absence of DOT numbers does not undermine the ALJ's step five finding and Plaintiff was not prejudiced by the VE's failure to provide them. Substantial evidence supports the ALJ's step five finding in this regard.

Plaintiff finally argues that the ALJ's failure to quantify the frequency of the sit/stand option in his hypothetical was reversible error. (Doc. No. 10 at 12). SSR 96-9p requires an ALJ's RFC assessment to be "specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185 (July 2, 1996). This ruling also emphasizes the usefulness of consulting a VE in these situations "in order to determine whether the individual is able to make an adjustment to other work." Id. However, specificity is not required when an ALJ's RFC finding and hypothetical are consistent with an "at will" sit/stand option. Thompson v. Astrue, 442 F. App'x 804, 807 (4th Cir. 2011); see also Pierpalio v. Astrue, No. 4:10-2401-CMC-TER, 2011 WL 7112913, at *6 (D.S.C. Dec. 15, 2011) (finding that an "at will"

13

indication was sufficient to satisfy the frequency requirement). Additionally, the reasonable implication of an ALJ's silence regarding the frequency of a claimant's need to alternate between sitting and standing is that the sit/stand option is "at-will," "as needed," or otherwise at a claimant's own volition. See Wright v. Astrue, No. 1:09CV0003, 2012 WL 182167, at *8 (M.D.N.C. Jan. 23, 2012) (holding that the ALJ's inclusion in the RFC and hypothetical of a sit/stand option was sufficient because its "at will" nature was reasonably implied).

In the instant case, the reasonable implication is that the sit/stand option was at Plaintiff's own volition. It also seems that the VE attached an "at will" meaning to the hypothetical question because he did not request any clarification as to the frequency of Plaintiff's need to alternate sitting and standing. Plaintiff has not presented any evidence explaining why he could not perform the jobs identified by the VE based upon his ability to sit or stand, and Plaintiff's counsel did not question the VE during the hearing regarding the impact of the sit/stand option. Accordingly, the Court finds that the ALJ did not err by indicating only Plaintiff's need for a sit/stand option in his hypothetical question, and he did not err by failing to specify to the VE how often Plaintiff needed to alternate between sitting and standing. Thus, the ALJ's finding is supported by substantial evidence, and Plaintiff's fourth objection is overruled.

## IV. CONCLUSION

In light of the deferential standard of review applied under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), the Court finds that there is substantial evidence to support the Commissioner's final decision.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 9), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 11), is **GRANTED**; and

3. The Clerk of Court is directed to close this case.

_____
Robert J. Conrad, Jr.
United States District Judge